## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| LOUISIANA CLEANING SYSTEMS, ET AL | CIVIL ACTION NO. 14-2371 |
| VERSUS | JUDGE ROBERT G. JAMES |
| KEVIN COBB, INDIVIDUALLY AND AS SHERIFF OF FRANKLIN PARISH | MAG. JUDGE KAREN L. HAYES |

## RULING

Plaintiffs Charles Nugent ("Nugent"), Kimberly Marie Zehr ("Zehr"), Isaiah Foster ("Foster"), Darrisha Walker ("Walker"), Corey Jamal Taylor ("Taylor"), and Louisiana Cleaning Systems, Inc. ("LCS") bring this suit against Defendant Sheriff Kevin Cobb ("Sheriff Cobb"), pursuant to 42 U.S.C § 1983, for alleged violations of Plaintiffs' First and Fourteenth Amendment rights.

Pending before the Court is Sheriff Cobb's Motion for Summary Judgment on the qualified immunity issue. [Doc. No. 45]. For reasons set out below, the motion is GRANTED IN PART and DENIED IN PART.

## I.   FACTS

Plaintiffs in this matter are LCS; its owner, Nugent; and salespeople who work for LCS. LCS is a Kenner-based company that sells Kirby vacuum cleaners door to door. LCS' tactics generally include entering target locations in unmarked vans. Upon entry, several LCS salespeople disperse, going door to door and attempting to make sales. At the time of the events in question, LCS' sales force was made up of both black and white salespeople.

In July of 2013, Plaintiffs attempted to sell vacuum cleaners in Franklin Parish. According to Sheriff Cobb, multiple residents contacted the Sheriff's Department and complained of suspicious activity which included individuals walking in neighborhoods after being dropped off from an

unmarked van, individuals knocking on doors at strange hours, individuals trying to enter the homes of residents, individuals refusing to leave after being asked to do so, and individuals failing to provide proper identification.

In her deposition testimony, one resident, Crystal Stephens ("Stephens"), describes an encounter with an LCS salesperson. The salesperson arrived at Stephens' home around 7:30 a.m. on a Sunday morning and sought entrance to conduct a demonstration. Stephens repeatedly refused, at one point telling the salesperson, "we have a no door-to-door soliciting ordinance in Gilbert." [Doc. No. 47-33, Stephens' Depo., p. 9]. The salesperson eventually left. Stephens later spoke to another resident, Beth Edwards ("Edwards"). [Doc. No. 47-33, Stephens Depo.,  p. 11]. Edwards confided that she had experienced a similar incident and had become concerned when an unmarked van arrived to pick up the salesperson who had attempted to sell to her. [Doc. No. 45-7, Declaration of Beth Edwards]. Stephens states that Edwards sent her a text saying "hey, the kirby vacuum lady came by here, too." [Doc. No. 47-33, Stephens Depo., p. 13]. After talking with Edwards, Stephens allegedly called the Sheriff's Department to complain. [1]

Despite Stephens' testimony, the Sheriff Department's complaint log reveals only three complaints. [Doc. No. 47-18].  Although somewhat unclear, it appears the recorded complaints did not come from Stephens.

Around this time, Sheriff Cobb claims that an officer within the parish ran a background check on the LCS salespeople. The background checks revealed that some of the salespeople had criminal

---

[1]Sheriff Cobb also submits a declaration from Rhonda Gill ("Gill"). Gill, a Franklin Parish resident, claims that an LCS salesperson attempted to sell her a vacuum. Gill realized the salesperson had no credentials or mode of transportation and became nervous. An unmarked van appeared to pick up the salesperson. Gill claims that she then complained to the Sheriff's Department. [Doc. No. 45-8, Declaration of Rhonda Gill].

histories.

On July 28, 2013, after learning of this criminal history, Sheriff Cobb instructed Deputies Mulkay and Wilson to stop the van and detain Plaintiffs for a limited time, so that he could speak to Nugent about the complaints. Plaintiffs claim the deputies detained them for two hours while waiting for Sheriff Cobb to arrive. Sheriff Cobb claims the stop and detention lasted ten minutes.

Once Sheriff Cobb arrived,  Plaintiffs contend that he informed them that the occupational license permit to solicit "should never have been issued and you can stop back and get your $100 permit back." [Doc. No. 47-5, Nugent Affidavit].  He then allegedly informed Plaintiffs they had the right to sell in the Parish and they "could do what [they] want[ed], but this is going to keep happening." *Id.* Plaintiffs assumed that this comment meant they would continue to be harassed. Sheriff Cobb claims the comment carried no hostile undertones; he simply informed Plaintiffs that, if they continued to sell in the Parish, he would get more complaints and would have to respond to them. Then, Sheriff Cobb purportedly stated "even though you have legal documents to allow you to work here, we don't want you here." *Id*. However, Nugent admitted in his deposition that Sheriff Cobb did not actually prohibit Plaintiffs from selling in the parish.[2]

_____

[2]Nugent stated the following during his deposition:

Q.      Tell me how that conversation went.

A.      The Sheriff pulled me aside. He said, he walked me over [sic]. He told me that we're not wanted here. I said I have a permit. I've done everything you guys asked me. I'm following protocol, exactly what you want. How can you tell me I can't work. He said well, if you keep working, this is going to keep happening. We were already sitting there for easy, easy two hours. By the time the deputies ran information and then said to wait for the Sheriff, then the Sheriff talked to the deputies for a little while before he pulled me out. I said I don't understand. We have a permit. If you get a call, why don't you just tell them we have a permit. They are not calling saying we did anything wrong. They are just asking if we're

After his conversation with Nugent, Sheriff Cobb says that he instructed his deputies to follow the van in order to determine its next move. The van left, and the deputies followed it to the parish line. Plaintiffs claim, however,  that Sheriff Cobb ordered the deputies to escort the van out of Franklin Parish.

In December 2013, Sheriff Cobb maintains that an occupational license renewal application was mailed to Plaintiffs to renew their permit for 2014, but Plaintiffs did not submit the renewal application or the requisite renewal fee. Plaintiffs claim that Sheriff Cobb repeatedly delayed sending them an application for a permit. In support of that claim, they cite conversations between Crystal Nugent and Deputy Clerk Adrian Whitman ("Whitman").[3] Whitman was a tax clerk that apparently had a role in the permit process. Crystal Nugent claims that she spoke to Whitman several times about

---

legal. It doesn't matter. We'll come out every time. You should probably go somewhere else because you're not welcome here. I said I paid you for a permit. You took my money. He says well, you can go back and get your money back if you want to, but we don't want you here.

Q.      Did anyone get arrested?

A.      No.

Q.      Did the Sheriff tell you you could not do business there the next day?

A.      He didn't specifically say that. But he was very clear that we were going to be continued to be harassed if we worked.

Q.      Did he say he was going to harass you or did he say that they were going to be called and they would have to come out?

A.      He said this is going to keep happening, indicating we're going to keep stopping you, holding you up.

[Doc. No. 47-35, Nugent Depo, p. 17].

[3]Crystal Nugent is Charles Nugent's wife.

a permit application in June 2014. Whitman informed her that Sheriff Cobb had not approved the request. Crystal Nugent asserts that she recorded these phone calls, the transcripts of which Plaintiffs repeatedly cite.[4]

Around the time Plaintiffs requested a license, Plaintiffs' counsel wrote to Sheriff Cobb, accusing him of prohibiting door-to-door sales in the community. The correspondence also suggested that Sheriff Cobb's stop and detention of Plaintiffs–which had occurred nearly 11 months prior–was illegal.

On June 12, 2014, Sheriff Cobb responded to Plaintiffs' counsel. Sheriff Cobb indicated that there was nothing to prohibit Plaintiffs from selling door to door in Franklin Parish. He recommended that the LCS salespeople change their methods or find another parish in which to solicit. The Sheriff further informed Plaintiffs that, in response to resident complaints, he had investigated their criminal histories, and invited Plaintiffs and Plaintiffs' counsel to meet with him to discuss the matter further.

Instead, Plaintiffs filed the instant lawsuit on July 24, 2014. [Doc. No. 1]. Plaintiffs essentially make three allegations: (1) Sheriff Cobb, both individually and in his capacity as Sheriff of Franklin Parish, violated Plaintiffs' First Amendment rights by harassing them, (2) Sheriff Cobb violated Plaintiffs' First Amendment rights by denying them an occupational license, and (3) Sheriff Cobb violated Plaintiffs' right to equal protection under the Fourteenth Amendment by enforcing a licensing

---

[4]The transcript is actually dated June of 2013. For purposes of this motion however, the Court construes this as a typographical error and takes as credible Crystal Nugent's affidavit, in which she claims the conversation took place in June of 2014. *See Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003) ("On summary judgment, all admissible evidence must be construed in favor of the non-movant").

ordinance that unconstitutionally discriminated against many commercial solicitors.[5] Later in the litigation, Plaintiffs brought a claim against Sheriff Cobb for allegedly violating their Fourteenth Amendment rights to equal protection by discriminating against them on the basis of race.

It is not entirely clear when Plaintiffs received the permit application, but in December 2014, Plaintiffs paid the requisite fee to have their permit reinstated. Sheriff Cobb then reinstated the permit.

On January 23, 2015, the parties agreed to entry of a preliminary injunction. Sheriff Cobb is prevented from harassing Plaintiffs, or in any way preventing them from engaging in door-to-door solicitation; Sheriff Cobb is to issue a valid 2015 occupational licence; and Plaintiffs are to leave the homes of potential customers upon being asked to do so. [Doc. No. 16, Consent Agreement on Issuance of Preliminary Injunction].

On August 11, 2015, trial in this matter was continued without date. On August 19, 2015, Sheriff Cobb filed a motion for summary judgment that was limited to the issue of qualified immunity. [Doc. No. 45]. Plaintiffs filed a memorandum in opposition. [Doc. No. 47].

II.     LAW AND ANALYSIS

    A.     **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying

---

[5]The parties did not brief the constitutionality of the Parish's licensing requirements. Accordingly, the Court does not address it.

portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)); *see also Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'").

## B.   Qualified Immunity Analysis

The Court employs a two-pronged inquiry to resolve questions of qualified immunity at

summary judgment. "The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury...show the officer's conduct violated a [federal] right[.]'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id*. (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 134 S.Ct. at 1866 (citing *Brosseau v. Haugen*, 543 U.S. 194, 195 n. 2 (2004) (per curium)). "This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id*. (quoting *Anderson*, 477 U.S. at 249).

Plaintiffs allege that Sheriff Cobb's actions violated both their First Amendment right to free speech and Fourteenth Amendment right to equal protection. Each allegation is considered in turn.

### 1.     *Equal Protection Violation*

Plaintiffs claim Sheriff Cobb harassed them because some of the salespeople were African-American. Sheriff Cobb argues that this claim lacks any evidentiary foundation–indeed, multiple LCS salespeople were white. Sheriff Cobb also asks the Court to dismiss the Equal Protection claim because Plaintiffs raised it for the first time in their pre-trial order.

Raising a claim for the first time in a pretrial order is not grounds for dismissal. *See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2003). However, lack of evidence is. In the absence of a facially-discriminatory action, Plaintiffs must introduce evidence of the state actor's discriminatory intent. *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265-66 (1979).The

Court cannot infer discriminatory animus because adverse actions were taken against African-Americans. In this case, Cobb's actions were facially-neutral, and there is no other evidence that he acted with discriminatory animus.

Plaintiffs' only evidence of race discrimination comes from comments made by homeowners. Even assuming, *arguendo*, that these homeowners made racially derogatory comments, a cause of action for race discrimination does not follow. Put simply, the homeowners are not state actors. *See American Mfrs. Mut. Ins. Co. v. Sulivan*, 526 U.S. 40, 50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful'") (citations omitted).  Because Plaintiffs fail to support their proposed race discrimination claim with any evidence of discriminatory animus by Sheriff Cobb, their race discrimination claim fails. To the extent Sheriff Cobb moves the Court to dismiss Plaintiffs' Equal Protection claim, his motion is GRANTED and that claim is DISMISSED WITH PREJUDICE.

### 2.    *First Amendment Violations*

In effect, Plaintiffs bring two First Amendment claims. First, Plaintiffs maintain that Sheriff Cobb and his deputies harassed them and informed them that they were not welcome in the parish. Second, Plaintiffs claim that Sheriff Cobb violated their First Amendment rights by refusing to issue the company an application for a permit for several months.

### a.    *Alleged Harassment*

Plaintiffs claim that Sheriff Cobb violated their First Amendment right to free speech by informing them that they were not welcome in Franklin Parish, detaining their van for a prolonged period so that Sheriff Cobb could speak with Nugent, telling Plaintiffs that "this is going to keep

happening" (which they interpreted to mean they would continually be harassed) if they continued to sell in the area, and following them to the Parish line.

Initially, it becomes important to determine the nature of the allegations. Plaintiffs appear to conceptualize their claims as actual violations of their affirmative rights to free speech. Sheriff Cobb analyzes the claims under a retaliation framework. The two theories are distinct. On the one hand, an affirmative violation of the First Amendment requires that state action actually deny engagement in protected speech. On the other hand, a First Amendment retaliation claim depends not on the denial of the constitutional right, but on the harassment the plaintiff received for exercising his rights. *See Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005); *see also*, *Linneman v. City of Aberdeen*, CA No. MJG-12-2021, 2013 WL 3233526, at *7 (D. Md. June 25, 2013) ("a First Amendment Retaliation claim is viable even if the plaintiff is not actually deprived of a First Amendment right where 'conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights'") (citations omitted).

Here, Plaintiffs' claims are best conceptualized as First Amendment retaliation claims. *See Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007) (characterizing claim as one of free speech retaliation when anti-abortionist plaintiffs were detained by law enforcement officials for hours in relation to the graphic images on the sides of their trucks). There was no denial of Plaintiffs' free speech rights. As Nugent admits, Sheriff Cobb did not prohibit Plaintiffs from selling vacuum cleaners in the area. Rather, Plaintiffs believed Sheriff Cobb would order his deputies to harass them if they attempted to sell. Thus, with respect to the actions Sheriff Cobb allegedly took in July 2013, Plaintiffs have alleged a First Amendment retaliation claim.

Prevailing on a First Amendment retaliation claim requires Plaintiffs to show:

1.      They were engaged in a constitutionally protected activity;

2.      That Sheriff Cobb's conduct caused Plaintiffs to suffer an injury that would chill a
        person of ordinary firmness from continuing to engage in that activity; and

3.      That Sheriff Cobb's adverse actions were substantially motivated by Plaintiffs'
        constitutionally protected activities.

*Keenan v. Tejada*, 290 F.3d 252, 257 (5th Cir. 2002).

Plaintiffs can at least introduce an issue of material fact as to these elements. Therefore, granting qualified immunity based on the first prong of the qualified immunity analysis is inappropriate.

First, as a general rule, the First Amendment protects door-to-door solicitation. *Watchtower Bible and Tract Soc. of New York, Inc. v. Village of Stratton*, 536 U.S. 150 (2002).  The parties' sparse briefing on the first element indicates acknowledgment that the element is met. Second, viewed in a light most favorable to Plaintiffs and making all inferences in their favor, Sheriff Cobb's actions were sufficient to chill a person of ordinary firmness from continuing to engage in door-to-door solicitation. *See Keenan*, 290 F.3d at 259 (finding inordinately long traffic stop chilled speech).

The parties dispute whether evidence exists showing Sheriff Cobb was substantially motivated by Plaintiffs' protected activity. Sheriff Cobb introduces declarations from multiple residents claiming that they called the Sheriff because of suspicious activities–not the door-to-door sale of vacuum cleaners. Further, he testifies in his own deposition that he received multiple calls and complaints describing suspicious activity, not door-to-door vacuum cleaner sales.

Nevertheless, Plaintiffs claim that the Franklin Parish Sheriff's complaint log, which contains an entry stating "advised they were selling vacuums" creates a dispute of material fact. [Doc. No. 47-18]. They also point to a portion of Stephens' deposition testimony in which she describes the text

11

message conversation with Edwards discussing a "Kirby vacuum lady." [Doc. No. 47-33, Crystal Stephens Depo, p. 13]. According to Plaintiffs, this evidence entitles a reasonable juror to find Sheriff Cobb's adverse actions were substantially motivated by an aversion to free speech.

Courts rarely resolve claims involving an actor's state of mind at summary judgment. *See Center for Bio-Ethical Reform, Inc.*, 477 F.3d at 823 (noting summary judgment rarely appropriate in free speech retaliation cases); *see also International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991) ("When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility"). That principle rings true in this case, and the Court finds the record raises inferences that preclude summary judgment. Given the additional evidence that at least one town within the parish may have banned door-to-door solicitation altogether, a reasonable juror could find that some complaints to Sheriff Cobb were as much about the door-to-door sales as the tactics used.

Turning to the second prong of the analysis, the Court can deny qualified immunity only if "the law so clearly and unambiguously prohibited [Sheriff Cobb's] conduct that 'every reasonable official would understand that what he is doing violates [the law]." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011). "Existing precedent must have placed the statutory or constitutional issue beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). "The *sine qua non* of the clearly-established inquiry is 'fair warning.'" *Morgan*, 659 F.3d at 373 (quoting *Hope*, 536 U.S. at 741). "In practice, this means that 'whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the official's action, assessed in light of the legal rules that were 'clearly established' at the time it was

12

taken." *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. at 635, 639 (1987)).

Applying those concepts to the instant facts, it is clearly established law that a state official may not retaliate against a private citizen because of his speech. *See Keenan*, 290 F.3d at 258. However, when the officer has probable cause to arrest the citizen, the law is less clear and courts are more hesitant to deny qualified immunity. *Id.* at 262. In this case, Sheriff Cobb claims he acted in good faith because he had probable cause to arrest at least one of the LCS salespeople for criminal trespass based on complaints he received from citizens.

However, the Court finds the record unclear on this issue. There are declarations from citizens which state that LCS salespeople would not leave their property after being asked to do so. But it is not clear when the residents made these complaints and whether they were communicated to Sheriff Cobb. If the complaints were not communicated to him, then Sheriff Cobb cannot rely on them to establish the reasonableness of his actions.

Moreover, other factual issues remain unsettled that preclude qualified immunity at this juncture. Plaintiffs have raised a genuine issue of material fact about the length of time they were detained and Sheriff Cobb's statements during the stop. These questions could bear on the objective reasonableness of Sheriff Cobb's actions.

For these reasons, to the extent Sheriff Cobb seeks qualified immunity based on the July 2013 stop, his motion for summary judgment is DENIED.

### b.    *Alleged Denial of a License Application*

Plaintiffs also aver that Sheriff Cobb violated their First Amendment right to free speech by denying them an occupational permit to conduct business in Franklin Parish for 2014. Specifically,

13

Plaintiffs contend that Sheriff Cobb did not fax to them an application for a permit in 2014 despite numerous calls from Crystal Nugent. [Doc. No. 47, p. 6, Plaintiffs' Memorandum in Opposition]. Plaintiffs recorded the calls and resultant conversations with Deputy Whitman. In the transcripts, Whitman states that Sheriff Cobb had not approved or responded to the application request.

Sheriff Cobb argues that Plaintiffs have had a permit renewal application since 2013 and never paid the requisite fee. He also contends that, these facts, even if true, do not amount to a First Amendment violation because there is no First Amendment right to have a permit application faxed upon demand. Or, if there was a First Amendment violation, he lacked fair notice that his conduct would deprive Plaintiffs of their First Amendment rights.

Sheriff Cobb's arguments on this issue are unavailing."[T]he license for a First Amendment-protected business must be issued within a reasonable period of time, because undue delay results in the unconstitutional suppression of protected speech." *FW/PBS, Inc v. City of Dallas*, 493 U.S. 215, 228 (1990). Implicit in that principle is that an *application* for the permit or license must be issued within a reasonable time as well to ensure that, if the permit is denied, prompt review is available. Sheriff Cobb insists that Plaintiffs received a permit renewal application in December 2013 in accordance with Franklin Parish policy, but Plaintiffs failed to complete the application. Yet, in his deposition testimony, Nugent denies receiving that permit application. Further, Plaintiffs paid the requisite fees in December 2014, but it is unclear when they received the application. If Plaintiffs did not receive the application until December 2014, there would have been an approximately six month period in which their speech was stifled because of an inability to complete an application. Viewing the record most favorably to Plaintiffs, the Court is presented with a situation where a group that sought a permit to solicit did not receive the application for months despite multiple requests and

14

inconsistent with the normal policy of Franklin Parish.[6] Based on this record, a reasonable juror could infer that Plaintiffs' free speech rights were violated because Sheriff Cobb refused to issue a permit application for several months.

Turning to the second prong of the qualified immunity analysis, it was clearly established in June 2014 that a public official should issue a decision on a permit application within a reasonable period of time. By implication, it was clearly established that a public official must issue the *application* for the permit within a reasonable period of time.

Further, unsettled factual issues prohibit a developed analysis into the reasonableness of Sheriff Cobb's actions. Whether Sheriff Cobb knew about the application request, and whether LCS received an application renewal form at an earlier date, are issues the record fails to resolve. Thus, to the extent Sheriff Cobb seeks qualified immunity on the permit application issue, his motion for summary judgment is also DENIED.

## III.   CONCLUSION

For these reasons, to the extent Sheriff Cobb seeks qualified immunity on Plaintiffs' Equal Protection race discrimination claim, the motion is GRANTED and that claim is DISMISSED WITH PREJUDICE. The motion is otherwise DENIED.

MONROE, LOUISIANA, this 1st day of March, 2016.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[6]Plaintiffs claim that, in his deposition, Sheriff Cobb admitted telling Whitman to "hold off" on sending the application. Plaintiffs follow this statement with a citation to a portion of Sheriff Cobb's deposition that is not in the record. The Court does not, therefore, consider that portion of Sheriff Cobb's deposition testimony.

15